```
         UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF WEST VIRGINIA
                 AT CHARLESTON
```

**GILBERT KESLING,**

      **Plaintiff,**

**v.**                                    **Civil Action No. 2:09-588**

**COUNTRYWIDE HOME LOANS, INC.**
**and BANK OF AMERICA, NA,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending is the motion for summary judgment of defendant Countrywide Home Loans, Inc. ("Countrywide"), filed September 3, 2010.

### I.  Background

In this action, plaintiff Gilbert Kesling ("Kesling") alleges that Countrywide engaged in abusive loan servicing practices and wrongfully foreclosed on his property. Kesling is a resident of West Virginia. (Am. Compl. ¶ 2). Countrywide is a New York corporation with its principal place of business in California. (Notice of Removal ¶ 6). Defendant Bank of America is a North Carolina corporation and the parent company of

Countrywide.[1]  (Id. ¶ 7).

In the summer of 2005, Gilbert Kesling and his then-wife Shawna Kesling purchased a parcel of land in Gassaway, West Virginia, along with a mobile home to be placed upon the property. (Am. Compl. ¶¶ 5-6). The Keslings approached Countrywide to secure financing for their purchase. (Def.'s Mot. Summ. J., Ex. 1, Kesling. Dep. 33).[2] After Countrywide approved the Keslings' application, a loan in the amount of $102,192 was closed on July 29, 2005. (Id., Ex. 2, 205-45).

In early 2007, the Keslings began to fall behind on their loan payments. (Id., Ex. 3, payment history, 686-99). They have made no payments since October 12, 2007. (Id.). Their difficulties in paying down the loan coincided with their divorce. (Am. Compl. ¶ 9; Kesling Dep. at 65:2-12). The court granting the Keslings' divorce assigned responsibility for the debt to Mr. Kesling. (Def.'s Mem. Supp. Mot. Summ. J. 2).

---

[1]    Defendant refers to Countrywide, Inc. and Bank of America, NA collectively as "Countrywide." (See Notice of Removal). The court will do the same.

[2]    Because Kesling has not responded to Countrywide's summary judgment motion, the court views the facts established by Countrywide's motion and supporting exhibits as uncontroverted. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993).

On May 1, 2007, with payments on the loan two months delinquent, Countrywide had the house inspected to assure that it was occupied. (Id.). A second inspection occurred in March 2008, after the loan had been referred for foreclosure, and monthly inspections have been conducted since July 2008. (Def.'s Mot. Summ. J., Ex. 4, Abbatecola Dep. 15-20). Fees ranging from $12.50 to $15.75 were charged to the loan for each inspection. (Def.'s Mem. Supp. Mot. Summ. J. 2).

After the trustee scheduled a foreclosure sale, Kesling initiated this action in the Circuit Court of Kanawha County on April 29, 2009. Defendants removed on May 28, 2009, invoking the court's diversity jurisdiction. Kesling subsequently amended his complaint on February 17, 2010. The amended complaint asserts four counts against defendants: Count I is a claim for illegal return of payments; Count II is for breach of the duty of good faith and fair dealing; Count III asserts that equity abhors forfeiture; and Count IV is a claim for illegal fees. (See generally Am. Compl.).

Countrywide moved for summary judgment on September 9, 2010, asserting that (1) Kesling's claim for illegal return of payments is not supported by the facts, (2) Kesling breached the

contract, not Countrywide, (3) equity does not require Countrywide to forfeit its contractual rights, and (4) Countrywide imposed no illegal fees on Kesling.  (See generally Def.'s Mem. Supp. Mot. Summ. J.).

On October 6, 2010, plaintiff's counsel moved to withdraw as counsel for Kesling.  The court held a hearing on the motion on October 18, 2010, which Kesling did not attend, and later granted the motion to withdraw by order dated October 19, 2010.  The court noted in the order that Countrywide had moved for summary judgment, and that plaintiff had not yet responded to the motion.  In the interest of facilitating plaintiff's efforts to retain new counsel, and to permit the additional time necessary for the prosecution of this action, the court granted plaintiff leave until December 6, 2010, to retain new counsel and have the lawyer notice his or her appearance in this case.  The court ordered that plaintiff would be deemed to represent himself in this action if he failed to retain new counsel by December 6, 2010.  Moreover, the court set January 6, 2011 as the deadline for plaintiff, or his newly retained lawyer on his behalf, to respond to Countrywide's motion for summary judgment.  The court stated that it would deem plaintiff's failure to respond by the imposed deadline as a representation on his part that he does not

object to the relief sought by Countrywide and that judgment may be entered against him accordingly.

On November 18, 2010, the court received a mail return receipt signed by plaintiff and certifying his receipt of the court's October 19, 2010 order.  (Doc. No. 50).  Plaintiff did not retain new counsel by December 6, 2010 and was therefore deemed to represent himself in this action on that date.  Plaintiff also did not respond to Countrywide's summary judgment motion by January 6, 2011.

## II.  Motion for Summary Judgment

A.  Governing Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing

the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

In this case, Kesling has not responded to Countrywide's motion for summary judgment. This does not, however, automatically entitle Countrywide to summary judgment in its favor. "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993). Accordingly, a district court "considering

a motion for summary judgment[] must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." Id.

B.  Count I: Claim for Illegal Return of Payments

Kesling alleges that, on at least one occasion, he attempted to make a partial payment on the loan but that Countrywide refused to accept the payment, insisting that he pay the arrearage all at once.  Count I asserts that Countrywide's refusal to accept Kesling's payment violated West Virginia Code § 46A-2-115, a provision of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-1-101, et seq. Countrywide moves for summary judgment as to Count I, asserting that it lawfully returned payments twice because of insufficient funds and another time because of a coding error (which was later rectified), and that it has accepted partial payments on at least two other occasions.  Countrywide also points out that the WVCCPA permits a secured creditor to refuse partial payments once the foreclosure process has begun.

Section 46A-2-115 of the West Virginia Code provides in pertinent part as follows:

> (c) All amounts paid to a creditor arising out of any consumer credit sale or consumer loan shall be credited

7

> upon receipt against payments due: Provided, That . . . partial amounts received during the reinstatement period set forth in subsection (b) of this section do not create an automatic duty to reinstate and may be returned by the creditor.

W. Va. Code. § 46A-2-115(c). The "reinstatement period" covers the "period beginning with the trustee notice of foreclosure and ending prior to foreclosure sale." Id. § 46A-2-115(b). Thus, § 46A-2-115 requires a lender of a consumer loan to credit any full or partial payments received from the borrower, subject to the exception that a lender may reject partial payments received after the foreclosure process has begun.

Countrywide concedes that it returned two partial payments to Kesling, one on January 4, 2007 and another on May 31, 2007, but maintains that it did so because of insufficient funds. (Def.'s Mem. Supp. Mot. Summ. J. 4). In support of this assertion, Countrywide relies on a spreadsheet attached as an exhibit to its summary judgment motion. (See Def.'s Mot. Summ. J., account listing status, CTW 0000012-13).[3] This spreadsheet, however, is simply a compilation of data and codes that the court has no means of deciphering and which Countrywide makes no attempt to interpret. While it does indicate that there were two "RETURN PAYMENT FEES," it does not clarify the reasons for the

---

[3] The cited spreadsheet entries are reproduced below:

10050 1/04/07 15.00 RETURN PAYMENT FEE 600 15.00 9006829002164 P41H
* * *
10050 5/31/07 15.00 RETURN PAYMENT FEE 600 27.50 9006926859352 PT1H

8

returned payments and consequently provides no support for Countrywide's contention that it returned Kesling's payments for insufficient funds. And because these partial payments were returned on January 4 and May 31 of 2007, apparently before the onset of the reinstatement period in 2008,[4] Countrywide cannot rely on the reinstatement period exception in W. Va. Code. § 46A-2-115(c).

Further, Kesling's deposition testimony –- when viewed in the light most favorable to him –- shows that there are disputed issues of material fact concerning Count I. This is demonstrated by the following exchange regarding Countrywide's refusal to credit Kesling's payments:

> Q.   Was it possible that there were insufficient funds and not enough money in the account when they tried to debit?
>
> A.   There was money in the account all the time. They just stopped taking it out. . . Once they quit taking it out of my bank account I have been sending money orders. I sent money orders and they sent it right back to me.

(Def. Mot. Summ. J., Kesling Dep. 50). This testimony contradicts Countrywide's assertion that it rejected Kesling's payments due to insufficient funds. Inasmuch as questions of material fact persist, Countrywide is not entitled to summary

---

[4] Countrywide never states precisely when the foreclosure process was initiated. Based on the totality of the evidence, though, the court gathers that it occurred in late 2008 or early 2009.

judgment with respect to Kesling's claim for illegal return of payments.

C.   Count II: Breach of Duty of Good Faith and Fair Dealing

Count II asserts that defendants breached their duty of good faith and fair dealing by refusing to work with Kesling to modify his loan and stop foreclosure.  Countrywide moves for summary judgment on the grounds that the law recognizes no such duty, and that an implied duty cannot conflict with express provisions of the contract.

West Virginia law "implies a covenant of good faith and fair dealing in every contract for purposes of evaluating a party's performance of that contract." Stand Energy Corp. v. Columbia Gas Transmission, 373 F. Supp. 2d 631, 644 (S.D. W. Va. 2005) (quoting Hoffmaster v. Guiffrida, 630 F. Supp. 1289, 1291 (S.D. W. Va. 1986)).  However, the West Virginia Supreme Court of Appeals has "declined to recognize an independent claim for a breach of the common law duty of good faith," and has instead held that such a claim sounds in breach of contract. Doyle v. Fleetwood Homes of Virginia, 650 F. Supp. 2d 535, 541 (S.D. W. Va. 2009) (citing Highmark West Virginia, Inc. v. Jamie, 655 S.E.2d 509, 514 (W. Va. 2007) ("it has been held that an implied covenant of good faith and fair dealing does not provide a cause of action apart from a breach of contract claim.")).  Because such a claim must be predicated on a breach of contract, it

10

follows that "[t]he implied covenant of good faith and fair dealing cannot give contracting parties rights which are inconsistent with those set out in the contract." Barn-Chestnut, Inc. v. CFM Dev. Corp., 457 S.E.2d 502, 509 (W. Va. 1995).

Kesling does not allege any breach of contract. Rather, Count II plainly asserts an independent claim for breach of the implied covenant of good faith and fair dealing. Since West Virginia law recognizes no such claim, Count II fails as a matter of law. Even if Count II did allege breach of an underlying contract, the uncontroverted facts show that Countrywide had no contractual obligation to modify Kesling's loan, that it was Kesling who breached his contractual duties under the Note by defaulting on his loan payments, and that Countrywide was free to foreclose in the event of default. (See Def.'s Mot. Summ. J., Ex. 7, Note, §§ 4, 7(B); id. Ex. 6, 0000007). The implied covenant, as noted above, cannot give Kesling rights which are inconsistent with the express provisions of the contract. Consequently, Countrywide is entitled to summary judgment as to Count II.

D.   Count III: Equity Abhors Forfeiture

In Count III, Kesling alleges that Countrywide has refused to exercise its rights to obtain repayment on the loan through alternative means, such as loan modification, and instead seeks to wrongfully foreclose on his home. Count III accordingly

11

requests appropriate equitable relief.  Countrywide moves for summary judgment as to Count III, asserting that the concept that "equity abhors forfeiture" is not a freestanding cause of action.

Countrywide is right; Count III does not assert an independent claim.  It is, instead, a request for equitable relief.  Equitable relief is dependent on the success of Kesling's primary claims, and the court may grant such relief if Kesling succeeds on those claims.  The court therefore denies summary judgment as to Count III.

E.   Count IV: Claim for Illegal Fees

Count IV asserts that Countrywide assessed charges on Kesling that were not authorized by law or agreement in violation of West Virginia Code §§ 46A-2-127(g) and -128(c).  Specifically, Kesling alleges that Countrywide improperly assessed inspection fees to his account on at least 17 occasions.  Countrywide moves for summary judgment as to Count IV on the grounds that it was legally authorized to charge Kesling for the inspection fees.

As it relates to Count IV, § 46A-2-127 provides in pertinent part as follows:

> No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:

12

\* \* \* \*

> (g) Any representation that an existing obligation of the consumer may be increased by the addition of attorneys fees, investigation fees, services fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation;

Id. § 46A-2-127(g). Section 46A-2-128(c) prohibits a debt collector from utilizing "unconscionable or unfair means" in the "collection or the attempt to collect from the consumer all or any part of the debt collector's fee or charge for services rendered." W. Va. Code § 46A-2-128(c).

Countrywide claims that the Deed of Trust authorized it to impose inspection fees upon Kesling in the event of default. (See Def.'s Mot. Summ. J., Deed of Trust, CTW 0000211 ¶ 7 (providing that if borrower fails to make loan payments as required by the Note, "Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property" and that "[a]ny amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument.")). The court agrees that this language in the Deed of Trust authorized Countrywide to charge Kesling reasonable fees for inspections of the property to assure that it remained occupied and was in acceptable condition. Further, contrary to Kesling's allegations, it does not appear that § 46A-2-127(g) prohibited

13

Countrywide from assessing reasonable inspection fees pursuant to the Deed of Trust, inasmuch as the court has been presented no basis for concluding that such fees could "not legally be added to the existing obligation" within the meaning of § 46A-2-127(g). To the contrary, § 46A-2-115(a), another provision of the WVCCPA, expressly permits consumer loan agreements that provide for recovery of "reasonable expenses" incurred as a result of "realizing on a security interest."  Id. § 46A-2-115(a).  This provision seems to provide statutory authorization for Countrywide's imposition of reasonable inspection fees.  The court also has no basis for concluding, based on the uncontroverted facts, that Countrywide assessed the inspection fees in an "unfair or unconscionable" manner in violation of § 46A-2-128(c).  Because it appears that Countrywide was legally authorized to assess the inspection fees, it is entitled to summary judgment as to Count IV.

### IV. Conclusion

For the foregoing reasons, the court ORDERS as follows:

1. That Countrywide's motion for summary judgment with respect to Counts I and III of plaintiff's amended complaint be, and it hereby is, denied.
2. That Countrywide's motion for summary judgment with respect to Counts II and IV of plaintiff's amended complaint be, and it hereby is, granted, and Counts II and IV are dismissed with prejudice.

      **The Clerk is directed to forward copies of this order to all counsel of record and to the plaintiff, by certified mail return receipt requested, at 43 and 1/2, Grass Lick Rd., Gassaway, West Virginia 26624.**

      DATED: January 24, 2011

      _____
John T. Copenhaver, Jr.
United States District Judge